UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| BRUCE PARKS, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 1:22-cv-41 |
| v. | ) | Judge Atchley |
| BERT BOYD, A.W. COBBLE, OFFICER CUTTER, and CPL. COLEMAN, | ) | Magistrate Judge Lee |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, a Tennessee Department of Correction ("TDOC") prisoner housed in the Bledsoe County Correctional Complex ("BCCX"), has filed a pro se complaint for a violation of 42 U.S.C. § 1983 raising claims arising out of various incidents during his confinement [Doc. 2]; and a motion to incorporate documents into his complaint [Doc. 4], which the Court liberally construes as a motion to supplement the complaint, as well as a motion for leave to proceed *in forma pauperis* [Doc. 1].

For the reasons below, Plaintiff's motion for leave to proceed *in forma pauperis* [*Id.*] will be **GRANTED**, his motion to supplement his complaint [Doc. 4] will be **GRANTED** to the extent that the Court will screen the allegations therein with the allegations of his original complaint, and this action will be **DISMISSED** because both the complaint and the supplement to the complaint fail to state a claim upon which relief may be granted under § 1983.

### I.    FILING FEE

It appears from Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] that he is unable to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] will be **GRANTED**.

As he is incarcerated, Plaintiff will be **ASSESSED** the $350.00 civil filing fee. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, United States District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, the Attorney General for the State of Tennessee, and the Court's financial deputy. This order shall be placed in Plaintiff's file and follow him if he is transferred to another correctional institution.

## II.     COMPLAINT SCREENING

### A.  Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### B. Complaint Allegations

On November 4, 2021, Plaintiff and five other inmates were transferred from Northeast Correctional Complex ("NECX") to BCCX and placed in a segregation unit [Doc. 2 p. 3]. On November 16, 2021, Plaintiff signed a memorandum stating he did not want protective custody "and [requesting] to go to the BCCX comp[ou]nd" [*Id.*]. Unit Manager Siems and Counselor White told Plaintiff that it would be up to the Warden to approve this, and since then he has been in segregation even though he is not in "close[] custody [], max custody[,] or punitive" [*Id.*]. In this segregated custody, Plaintiff has limited access to the phone, specifically one "30 min call a week," and does not get contact visits, work programs, or library study time to work on his appeal[1] [*Id.* at 3, 5]. Plaintiff is in solitary confinement and cuffed each time he exits his cell [*Id.* at 3].

---

[1] Plaintiff does not specify what appeal he is pursuing. But the Court takes judicial notice that he is serving a thirty-one-year sentence for his 2012 convictions for aggravated rape and aggravated battery and began serving this sentence in 2011. *See* https://apps.tn.gov/foil/search.jsp (last visited April 4, 2022). The Court also notes that in 2019, which was several years after Plaintiff completed his state court direct and post-conviction appeals of his 2012 convictions, a Court in this District denied Plaintiff habeas corpus relief for those convictions, and the Sixth Circuit dismissed his untimely appeal. *Parks v. Lebo*, No. 1:16-CV-149, Docs. 26 p. 2–3, 27, 33 (E.D. Tenn. Sept. 3, 2019). Then, in June 2021, Plaintiff filed a motion for authorization to file a second or successive motion for habeas corpus with the Sixth Circuit. *In re Bruce Parks*, No. 21-

3

Unit Manager Siems and Counselor White told Plaintiff that BCCX does not house "'med' custody inmates" or security threat group inmates, but it actually "house[]s both on Site 2" and in Unit 25 [*Id.* at 3, 5]. Plaintiff has written "Nashville Classification Dir[ector] Maloney" about this, and he has also filled out a number of request forms to the unit team about it [*Id.* at 5].

Plaintiff states that the conditions of his confinement "are extremely harsh" and that Defendant NECX Warden Boyd transferred him to this facility in retaliation for his disciplinary history to further punish him [*Id.*]. Plaintiff also states prison officials have told him he is in limbo and awaiting transfer, but he has been at BCCX for more than three months with no access to legal aid, no reading material, and no ability to work on his pending appeal in denial of his due process rights [*Id.*]. Plaintiff also cannot groom himself and is denied "proper trash procedures [] and cleaning supplies" [*Id.*]. He filed grievances about these issues, but they were dismissed [*Id.*].

Plaintiff also alleges that on January 19, 2022, at 12:25 p.m., he told Defendant Officer Cutter that his toilet was running over and would not stop, which was unsanitary, and Defendant Officer Cutter ignored this issue for several hours [*Id.*] At 1:05 p.m., Plaintiff notified other staff of this issue, and nothing was done [*Id.*]. Then, at 5:45 p.m., Plaintiff told Sgt. Belman about the issue, and at 7:15 p.m., Sgt. Belman turned the water off [*Id.* at 7]. This was not Plaintiff's first

---

5555, Doc. 1 (6th Cir. Mar. 29, 2022). This is likely the "appeal" to which Plaintiff refers in his complaint, as it was still pending when he filed this § 1983 action. *Id.* However, Plaintiff filed both his original and amended motions in that case before his November 2021 transfer to BCCX, nothing in the record suggests that Plaintiff needed to submit any other substantive filings in that action, and that action is now closed, as the Sixth Circuit denied Plaintiff's motion. *Id.* at Docs. 1, 4, 8.

4

issue with Defendant Officer Cutter, who Plaintiff says "h[a]s a history of abus[ing] his power playin[g] psychological games with inmates in segregation" [*Id.*].

Plaintiff also states that on January 13, 2022, Defendant Cutter approached him with a food tray and asked if he wanted it, and when he said yes, "[Defendant] Cutter said "stop f***** the staff and then walk[ed] off" [*Id.*]. Plaintiff then states the prison must serve inmates food and cannot deny it as retaliation, and that this Defendant is very unprofessional [*Id.*]. Additionally, on January 15, 2022, Plaintiff filed a grievance about Defendant Officer Cutter not picking up trash or providing cleaning supplies, and Defendant Cutter then ignored him [*Id.*].

Plaintiff then generally claims that prisoners' mail does not always get passed out and their food is always cold before again stating that his treatment is unacceptable and prison officials have not responded to his complaints about his issues, including the denial of job programs and sanitation [*Id.*].

Plaintiff additionally asserts that on February 9, 2022, Defendant Cpl. "'Coleman and S.T.G. Patterns'" ("STG Patterns") searched his unit and told him to strip naked and squat three different times [*Id.* at 6]. Plaintiff complied, and Defendant Cpl. Coleman then made him "bend over and spread [] his butt," at which point Plaintiff said, "this was too much" and that he had never been "dehumanized in such a manner" during his eleven years of incarceration [*Id.*]. Plaintiff also states that an unspecified officer then told him to put the hands he used "to spread his butt" inside his mouth [*Id.*]. When Plaintiff later returned to his cell after the search, he noticed his legal mail was open and asked STG Patterns who had opened it, and STG Patterns stated that he had done it and that he had the right to do so [*Id.*]. Plaintiff states that he does not dispute that STG Patterns had a right to open the mail, but he claims that inmates must be present

when their legal mail is opened and states that he filed a grievance about this matter as well [*Id.*].

Plaintiff has sued NECX Warden Bert Boyd, BCCX Warden A.W. Cobble, Officer Cutter, and Cpl. Coleman [*Id.* at 1, 3]. As relief, he seeks damages for emotional distress and abuse of power from Defendants Cutter and Cpl. Coleman, a change in policy and procedure from Defendant Wardens Boyd and Cobble, and a transfer from BCCX [*Id.* at 4]. Petitioner further requests proper steps for trash procedures, sanitary showers, legal aid, reading material, food trays to be given out on time, and inmate mail to be passed out within the same day [*Id.* at 7].

Additionally, in his motion to incorporate documents into the complaint which, as set forth above, the Court interprets as a motion to supplement the complaint, Plaintiff states that he has pending grievances [Doc. 4 p. 2]. Plaintiff also states that strip searches must be for a reasonably legitimate penological interest and should not be humiliating, excessive, or used to intimidate or punish, and that Defendant Cpl. Coleman had no justification for his "invasive inappropriate search" of Plaintiff [*Id.*].

Plaintiff next claims that he is being denied proper exercise, including outdoor exercise, in violation of his rights under the Eighth Amendment and has not had recreation in three months [*Id.*]. Plaintiff specifically asserts that Officer Gore has denied him and others recreation because "[their] room was not in order" [*Id.*]. Plaintiff also alleges that BCCX prisoners do not get cleaning supplies, that he requested clothing but has not yet received underwear, that he has no cable outlet in his current segregation housing and there is no legitimate reason for his restricted housing, and that BCCX has a discriminatory policy that violates his right to Equal Protection because everyone else transferred with him on November 4, 2021 is housed in Site 2 or Unit 25 "with STG status and are given a reclass" [*Id.*].

6

Plaintiff next sets forth various allegations regarding incidents during his BCCX confinement that he does not attribute to any named Defendant before he again alleges Defendant Cutter failed to help him with his running toilet [*Id.* at 3]. He then claims that on February 13, 2022, Defendant Cutter denied him food "d[ue] to his personal emotions," and that this was unprofessional [*Id.*]. Plaintiff additionally states that on an unspecified date, Defendant Cutter denied him and others a shower due to them "not standin[g] on th[eir] doors" even though there is no requirement that prisoners do so, and he states that this is another example of BCCX staff abusing their power [*Id.*].

Plaintiff then requests an internal investigation, "particular[ly] [for] racism," of various BCCX staff members, including Defendants Cpl. Coleman and Cutter [*Id.* at 3]. He also claims that he was not notified about his transfer to BCCX "out of retaliation for filing grievances upon staff corruption upon an officer named Worley," that he has not had those grievances returned, that his custody level does not meet the criteria for BCCX officials to have him confined in a cell twenty-four hours a day for more than three months, that other transfers have occurred since he arrived, and that jail officials have told him that he is on a list for transfer but he is dealing with the burden of emotional stress resulting from his current placement [*Id.* at 4].

**C. Analysis**

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983. For the reasons set forth below, the complaint fails to state a claim upon which relief may be granted under § 1983 as to any named Defendant.

### 1. General Allegations

First, Plaintiff does not connect many of his allegations to any named Defendant. To the extent that Plaintiff seeks to hold Defendant Warden Boyd and/or Defendant Warden Cobble liable for these general allegations based on their positions as Warden, he fails to state a claim upon which relief may be granted under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2002) (noting that "our precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"). And as Plaintiff's complaint filings do not allow the Court to plausibly infer that any named Defendant was personally involved in the allegations he does not connect to a named Defendant, those allegations fail to state a claim upon which relief may be granted under § 1983 as to any named Defendant.[2] *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim under § 1983). Thus, Plaintiff's allegations that he does not connect to any named Defendant will be **DISMISSED**, and the Court now screen only the allegations Plaintiff connects to a named Defendant.

### 2. Defendant Cutter

As set forth above, Plaintiff alleges that Defendant Cutter: (1) failed to remedy his complaint that his toilet was running for several hours; (2) has a history of playing psychological games with inmates and abusing his power as a correctional officer; (3) once told Plaintiff to

---

[2] This includes Plaintiff's allegation that he has been denied reading materials in his current housing placement. Specifically, while the Court finds this allegation troubling, Plaintiff does not set forth any facts from which the Court can plausibly infer that any named Defendant is personally involved in this denial. Also, Plaintiff notably did not present this allegation in his grievances challenging the conditions of his confinement that he attached to his complaint [Doc. 2 p. 8–12, 25–26].

8

"stop f***** the staff" after he asked Plaintiff if he wanted his food tray and Plaintiff said yes; (4) ignored Plaintiff after Plaintiff filed a grievance against him for not picking up trash or providing cleaning supplies; (5) denied Plaintiff a food tray "d[ue] to his personal emotions";[3] (6) denied Plaintiff and others a shower on one occasion due to the inmates not standing in their doors even though no policy required them to do so, and (7) should be investigated for racism, among other things.[4] But none of these allegations allows the Court to plausibly infer that Defendant Cutter violated Plaintiff's constitutional rights.

First, Plaintiff's allegations that Defendant Cutter did not remedy his toilet complaint, did not pick up trash or provide him cleaning supplies on one occasion, and denied him a shower on one occasion do not rise to the level of a constitutional violation. It is well settled that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). As such, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities'" violate a prisoner's rights under the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted). Accordingly, in examining such claims, a court must determine whether the risk of

---

[3] Plaintiff states in his complaint that this incident occurred on January 13, 2022, and he does not allege that Defendant Cutter denied him the food tray in this event [Doc. 2 p. 7]. Then, in his supplement to his complaint, Plaintiff states that on February 13, 2022, Defendant Cutter denied him a food tray due to personal emotions [Doc. 4 p. 3]. Thus, despite the similarity of Plaintiff's allegations regarding these events, and the fact that Plaintiff alleges they both occurred on the thirteenth day of their respective months, the Court assumes that they are separate events.

[4] In a grievance Plaintiff filed with his complaint, Plaintiff made additional allegations regarding this Defendant [Doc. 2 p. 16–19]. But as Plaintiff did not include many of his allegations from this grievance in his complaint filings and does not indicate any intent to incorporate his grievance allegations into his complaint filings, it is apparent that Plaintiff only seeks relief under § 1983 for the allegations he sets forth in his complaint filings.

9

which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *see also Rhodes*, 452 U.S. at 347. Nothing in the complaint or supplemental complaint suggests that Defendant Cutter's acts of failing to remedy Plaintiff's complaint that his toilet was running for several hours, failing to pick up trash and depriving Plaintiff of cleaning supplies on one occasion, or denying Plaintiff a single shower amounted to an extreme deprivation of a life necessity to Plaintiff or a grave risk to Plaintiff's health. Thus, these allegations fail to allege a plausible violation of Plaintiff's Eighth Amendment rights.

Similarly, Plaintiff does not support his assertion that Defendant Cutter once told him to stop "f*****" the staff" after asking Plaintiff if he wanted his food tray and Plaintiff saying yes with any facts from which the Court could find that this rose to the level of a violation of his constitutional rights, as "[a]llegations of threats and verbal abuse do not state cognizable claims under § 1983." *Faulkner v. Davidson Cty. Sheriff's Off.*, No. 3:14-MC-00740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) (citing *Williams v. Gobies,* 211 F.3d 1271, 2000 WL 571936, at *1 (6th Cir. May 1, 2000)).

Additionally, Plaintiff does not suggest that Defendant Cutter's decision to deny him a food tray in an unprofessional manner deprived of Plaintiff adequate nutrition to maintain good health, such that it could have violated Plaintiff's Eighth Amendment rights. *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated). And Plaintiff provides no other allegations from which the Court can plausibly infer that this act violated his constitutional rights.

10

Next, the Court liberally construes Plaintiff's statement that Defendant Cutter ignored him after he filed a grievance against this Defendant to seek to assert a retaliation claim. Such a claim requires Plaintiff to demonstrate that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). But even if the Court assumes that Plaintiff alleges that Defendant Cutter ignored him because he filed a grievance against this Defendant, Plaintiff has not presented facts from which the Court can plausibly infer that Defendant Cutter's act of ignoring him was substantial enough to deter a person of ordinary firmness from continuing to file grievances.

Also, Plaintiff's general allegation that Defendant Cutter has a history of abusing his power and playing psychological games with prisoners does not allow the Court to plausibly infer any violation of Plaintiff's constitutional rights.

Lastly, the Court liberally construes Plaintiff's request for an investigation of Defendant Cutter for racism to seek to assert a claim for violation of his right to Equal Protection. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. For a complaint to state a claim for violation of the Equal Protection Clause, it must allege that the plaintiff has been treated differently than other similarly situated individuals. *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (providing that, in order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental

11

right, targets a suspect class, or has no rational basis'" and that the "'threshold element of an equal protection claim is disparate treatment'" (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006) and *Scarbrough v. Morgan Cty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006)); *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"). Nothing in Plaintiff's complaint filings allows the Court to plausibly infer that Defendant Cutter treated any inmate of another race who is similarly situated to Plaintiff in all relevant respects differently than Plaintiff, and the complaint filings therefore fail to allege a plausible violation of Plaintiff's right to Equal Protection.

Accordingly, the complaint fails to state a claim upon which relief may be granted under § 1983 as to Defendant Cutter.

### 3. Defendant Cpl. Coleman

As set forth above, Plaintiff alleges that Defendant Cpl. Coleman subjected him to a strip search in which he had Plaintiff strip, squat three times, and "'spread' his butt,"[5] that this was dehumanizing and had no justification, and that strip searches must be reasonable and done for a legitimate penological purpose, rather than in a manner that is humiliating, excessive, or used to harass, intimidate, or punish. Plaintiff also seeks an investigation of Defendant Cpl. Coleman for racism, among other things.

First, the Sixth Circuit has recognized that "a strip search, by its very nature, constitutes an extreme intrusion upon personal privacy" and that, even where an officer has valid reasons for a

---

[5] Plaintiff also states that an unnamed officer instructed him to then put the fingers he used to assist with the strip search in his mouth, but he does not attribute this statement to Defendant Cpl. Coleman or set forth any facts from which the Court can plausibly infer that this was more than verbal abuse or harassment.

12

search, it may violate the prisoner's privacy rights if the officer conducts it where others can view the prisoner naked unless "special circumstances provide additional justifications." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 573, 574 (6th Cir. 2013). But both the Supreme Court and the Sixth Circuit have recognized that prison officials may subject prisoners and detainees to strip and body-cavity searches without individualized suspicion in a manner that does not violate the prisoner's constitutional rights. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333–34 (2012) (finding that correctional officials do not need reasonable suspicion to conduct visual body-cavity searches on inmates at intake); *Stoudemire*, 705 F.3d at 575 ("[S]uspicionless strip searches [are] permissible as a matter of constitutional law....").

While it is apparent that Plaintiff felt that the strip search at issue was excessive and done in a manner that was humiliating, his allegations that Defendant Cpl. Coleman had him strip, squat three times, and spread his butt cheeks, without more, do not allow the Court to plausibly infer that Defendant Cpl. Coleman was intentionally harassing or humiliating Plaintiff in a manner that was unreasonable or otherwise violated Plaintiff's constitutional rights, rather than simply conducting a thorough body cavity search. Thus, Plaintiff has failed to "nudge[] [this claim] across the line from conceivable to plausible" as to Defendant Cpl. Coleman. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Likewise, Plaintiff's request for an investigation of Defendant Cpl. Coleman for, among other things, racism, fails to state a claim upon which relief may be granted under § 1983 for the same reason it fails to state such a claim against Defendant Cutter.

Thus, the complaint likewise fails to state a claim upon which relief may be granted under § 1983 as to Defendant Cpl. Coleman.

#### 4. Warden Boyd

As to Defendant Warden Boyd, Plaintiff alleges only that this Defendant had him transferred to BCCX in retaliation for his disciplinary history and to punish him. However, Plaintiff provides no facts suggesting that his disciplinary history qualifies as protected conduct under the First Amendment, such that this allegation could support the plausible inference that his transfer to BCCX was retaliation in violation of his constitutional rights. *Thaddeus-X*, 175 F.3d at 394. Nor does Plaintiff set forth any facts from which the Court could find that this Defendant was personally involved in subjecting Plaintiff to any condition of confinement that amounted to an "extreme deprivation[]" of a life necessity in violation his constitutional rights, such that his complaint filings could state a claim against this Defendant for cruel and unusual punishment in violation of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). As such, the complaint fails to state a claim upon which relief may be granted under §1983 as to Defendant Warden Boyd as well.

#### 5. Warden Cobble

Plaintiff's complaint filings likewise do not allow the Court to plausibly infer that Defendant Warden Cobble has violated his constitutional rights. While Plaintiff alleges that he signed a document indicating that he did not want to be housed in protective custody and a jail official told Plaintiff that it would be up to the warden, whom the Court presumes to be Defendant Warden Cobble, to approve this, Plaintiff does not set forth any facts from which the Court can find that Defendant Warden Cobble's apparent failure to approve this request rose to the level of cruel and unusual punishment in violation of the Eighth Amendment, especially as a document

14

filed with Plaintiff's complaint indicates that his security threat group designation is the reason for his BCCX housing placement [Doc. 2 p. 10].

Moreover, to the extent that Plaintiff's complaint filings allege that Defendant Warden Cobble has violated his right to due process by housing him in segregation without a hearing, they fail to state such a claim upon which relief may be granted under § 1983. Specifically, in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court found that a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because it did not impose an atypical or substantial hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005). Plaintiff's factual allegations about his now approximately five-month placement in segregation likewise do not allow the Court to plausibly infer that this placement imposes an atypical or significant hardship on him relevant to normal prison life, or that his placement will inevitably affect the duration of his sentence, and they therefore fail to state a due process claim upon which relief may be granted under § 1983. *See McMann v. Gundy*, 39 F. App'x 208, 209–10 (6th Cir. 2002) (finding five-month placement in administrative segregation without a hearing did not implicate due process rights).

As such, even liberally construing the complaint filings in Plaintiff's favor, they fail to state a claim upon which relief may be granted under §1983 as to any Defendant, and this action will be **DISMISSED**.

15

Case 1:22-cv-00041-CEA-SKL   Document 5   Filed 04/05/22   Page 15 of 16   PageID #: 54

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined, the Attorney General of the State of Tennessee, and the Court's financial deputy;

5. Plaintiff's motion to incorporate documents into his complaint [Doc. 4], which the Court construes as a motion to supplement the complaint, is **GRANTED** to the extent that the Court has screened the allegations in this motion along with the allegations of Plaintiff's complaint;

6. Even liberally construing the complaint filings in favor of Plaintiff, they fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983;

7. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

8. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

**SO ORDERED.**

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**